# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BANK OF AMERICA, N.A.,

    Plaintiff,

v.

MALIBU CANYON INVESTORS, LLC, *et al*.,

    Defendants.

Case No. 2:10-CV-00396-KJD-PAL

**ORDER**

Presently before the Court is Plaintiff's Motion for Summary Judgment (#75). Defendants filed a response in opposition (#79) to which Plaintiff replied (#82). Also before the Court is Plaintiff's Motion in Limine to Exclude Report or Testimony of Scott D. Stehman (#76). Defendants filed a response in opposition (#78) to which Plaintiff replied (#81).

I.  Facts

Defendant Malibu Canyon Investors, LLC ("MCI") executed a "Promissory Note" (the "Note") dated January 10, 2006, and a "Loan Agreement" (the "Loan Agreement") dated January 10, 2006, wherein Plaintiff Bank of America, N.A., ("BOA") agreed to loan up to $13,300,000.00 (the "Loan") to MCI, the proceeds of which were to be used by MCI to finance a substantial portion of the costs incurred by MCI in its acquisition of real property and for other purposes as provided in the

1  Loan Agreement.  See Plaintiff's Motion for Summary Judgment, Doc. No. 75 ("MSJ #75 "),
2  Exhibits 1 and 2, Note and Loan Agreement; Exhibit 3, Affidavit of David Kegaries, Senior Vice-
3  President of Bank of America, ("Kegaries Aff.") at ¶ 7; Complaint, Doc. No. 1, at ¶ 11; Exhibit 22,
4  Deposition of Defendant Terrance Bean ("Bean Depo.") at 66:21-68:3; Defs.' Opp'n to Pl.'s Mot.
5  Summ. J., Exh. 4 at 13, Affidavit Defendant Terrance Bean ("Bean Aff."), Doc. No. 17-2; see also
6  January 13, 2012 Order, Doc. No. 63, on Plaintiffs Motion to Have Responses in Defendants'
7  Answer to the Complaint Deemed Admitted ("#63") at 6:1-5.3.

8        Defendant Terrance Bean ("Bean") executed a "Guaranty Agreement" dated January 10, 2006
9  in favor of BOA guaranteeing the payment to BOA of all amounts due and owing under the Loan
10  Documents together with interest and any other sums payable under the Loan Documents (the
11  "Guaranty").  See MSJ #75, Ex. 5, Guaranty; Kegaries Aff., Ex. 3 at ¶ 7; Compl. at ¶ 12; Bean
12  Depo., at 68:7-18; Bean Aff., ¶ 4; see also # 63 at 6:6-9.

13        MCI executed that certain "Deed of Trust, Assignment, Security Agreement and Fixture
14  Filing" dated January 10, 2006 in favor of BOA to secure MCI's loan obligations ("Deed of Trust").
15  See MSJ # 75,  Exhibit 6 Deed of Trust; Kegaries Aff. at ¶ 7; Compl. at ¶ 17; Bean Depo., at 68:22-
16  69:9; Bean Aff., ¶ 5; see also # 63at 6:20-22.  The Deed of Trust was recorded in the Official
17  Records of Clark County, Nevada ("Official Records") on January 11, 2006, in Book 20060111, as
18  Instrument No. 0005443.  See Deed of Trust, Ex. 6.

19        MCI executed a "Modification of Deed of Trust, Security Agreement and Fixture Filing
20  with Assignment of Leases and Rents" ("Modification of Deed of Trust") dated August 1, 2007.
21  See MSJ #75, Ex. 7, Modification of Deed of Trust; Kegaries Aff., ¶7; Compl. at ¶ 18; Bean Depo.,
22  at 69:13-70:3; Bean Aff., ¶ 6; see also  #63 at 6:23-25.  The Modification of Deed of Trust was
23  recorded in the Official Records on July 31, 2007 in Book  20070731, as Instrument No. 0005314.
24  See MSJ #75, Ex. 7, Modification of Deed of Trust; see also Kegaries Aff., at ¶ 7; Compl. at ¶ 22;
25  see also Order #63 at 7:3-4.

26

Pursuant to the Deed of Trust, BOA had a first priority, properly perfected lien in, on and to, among other things, the real property which is more particularly described in Exhibit A of the Deed of Trust and improvements thereon (the "Real Property"). See Deed of Trust; Compl. at ¶ 23; Bean Aff., at ¶ 7.

BOA and Defendants also executed a First Loan Modification Agreement dated August 1, 2007. See MSJ #75, Ex. 8, First Loan Modification Agreement; Kegaries Aff., ¶7; Compl. at ¶ 13; Bean Depo, at70:7-17; Bean Aff., at ¶ 8; see also Doc. No. 63, p. 6:10-11. BOA and Defendants executed a Second Loan Modification Agreement dated March 1, 2008. See MSJ #75, Ex. 9, Second Loan Modification Agreement; Kegaries Aff., Ex. 3 at ¶ 7; Compl. at ¶ 14; Bean Depo. at 70:19-71:3; Bean Aff., at ¶ 9; see also Doc. No. 63 at 6:12-13. BOA and Defendants executed a Third Loan Modification Agreement dated May 1, 2008. See MSJ Doc. No. 75, Ex. 10, Third Loan Modification Agreement; Kegaries Aff. at ¶ 7; Compl. at ¶ 15; Bean Depo. at 71:7-21; Bean Aff. at ¶ 9; see also Doc. No. 63 at 6:14-15.1. The First Loan Modification Agreement, the Second Loan Modification Agreement, and the Third Loan Modification Agreement are hereinafter referred to as the "Loan Modifications." Collectively, the Note, Loan Agreement, Guaranty, the Loan Modifications, Deed of Trust, and Modification of Deed of Trust are referred to as the "Loan Documents."

Pursuant to the Note and the Loan Modifications, the loan was due in full on August 1, 2008, the maturity date. Pursuant to the Guaranty, Bean unconditionally and irrevocably guaranteed the punctual payment, when due, of all sums of money which Borrower was obligated to pay under the Loan Documents. See Guaranty at ¶ 1. Further, Bean agreed to pay all costs and expenses (including, without limitation, attorneys' fees) incurred by BOA in enforcing BOA's rights and remedies under the Guaranty. See id. at ¶ 10. The obligations of the Guarantor are independent of and in addition to the Borrower's commitments under the Loan Documents. See id. at ¶¶ 2(a)-(b), 3.

Under the Note, a "Default" occurs when: (1) Borrower "fails to pay when as due and payable any amounts payable by Borrower to Lender under the terms of this Note;" (2) "[a]ny

3

covenant, agreement or condition in their Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period;" or (3) "a Default (as therein defined) occurs under any of the Loan Documents other than this Note." See Note, ¶¶ 8.1 - 8.3.

Borrower and Guarantor defaulted under the terms of the Loan Documents by failing to pay off the Loan by August 1, 2008, the maturity date set forth in the First Loan Modification. Pursuant to its rights under the Loan Documents, BOA declared the entire balance due from MCI to be immediately payable. See MSJ #75, Ex. 11, Demand Notice; Compl. at ¶ 30; see also Doc. No. 63 at 7:7-8.

On August 12, 2008, BOA filed a judicial foreclosure action under NRS 40.430 in the Eighth Judicial District Court, Clark County, Nevada ("State Court") captioned Bank of America. N.A. v. Malibu Canyon Investors, LLC, Case No. A569421 (the "Judicial Foreclosure Action"). See Compl. at ¶ 31; see also Bean Aff., at ¶ 11; Doc. No. 63 at 7:9-12. On April 30, 2009, the State Court entered its "Order Granting Plaintiff's Motion for Summary Judgment" ("State Court Order"), a final judgment on BOA's Judicial Foreclosure Action. See MSJ #75, Ex. 12, State Court Order; Compl. at ¶ 32; Bean Aff. at ¶ 12; Doc. No. 63 at 7:13-21.

The State Court found that: (1) MCI executed all the loan documents; (2) on August 1, 2008, MCI "defaulted under the Loan Documents by failing to make its required payment due under the Loan Documents upon maturity of the Loan;" (3) "on or about August 4, 2008, Bank of America delivered to Malibu, by overnight mail, a default notice;" (4) "[p]ursuant to its rights under the Loan Documents, [Plaintiff] declared the entire balance due from [MCI] to be immediately payable;" (5) to date, MCI "has-failed to pay the amounts due and owing" to [Plaintiff] in accordance with the terms and conditions of the Loan Documents; (6) based upon the foregoing, "the Court finds that [Plaintiff] is entitled to foreclose on the Property pursuant to NRS 40.430 because there are no genuine issues of material fact that [MCI] is in default of the Promissory Note and Loan Agreement." See State Court Order at 3:15-20; 3:26-28; and 4:13-15. Moreover, the State Court held that BOA retained its

rights to seek a deficiency judgment under NRS Chapter 40.  See State Court Order at 5:20-21; Compl. at ¶ 32; see also Doc. No. 63 at 7:13-21.

The State Court ordered: (1) the sale of the Property secured by the Deed of Trust pursuant to NRS 40.430(3); (2) that the proceeds of the sale be applied as provided in NRS 40.462; and (3) Plaintiff retains its right to seek a deficiency judgment pursuant to NRS Chapter 40.  See State Court Order, Ex. 12.  On September 22, 2009, the Sheriff of Clark County, Nevada sold the Property.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

5

Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. <u>Villiarimo v. Aloha Island Air Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

III.  Analysis

Plaintiff seeks summary judgment against Defendants on its claim for breach of the Loan Documents and application for deficiency judgment against Defendant MCI and its claim for breach of the Guaranty against Defendant Bean. Plaintiff asserts that claim and issue preclusion prevent Defendant MCI from relitigating the breach of the Loan Documents. Plaintiff also asserts that claim and issue preclusion prevent Bean from contesting the enforceability of the Guaranty. The Court agrees that claim and issue preclusion prevent MCI from relitigating its breach of the Loan Documents. However, the Court disagrees that Bean is precluded from litigating the enforceability of the Guaranty. However, Bean incorrectly defends his breach asserting that the Guaranty is an unenforceable adhesion contract. Therefore, the Court must also grant summary judgment, because Bean does not contest that he executed the Guaranty and breached its terms. Liability having been determined, the Court will set the case for a deficiency hearing in accordance with NRS 40.457.

   A. Issue and Claim Preclusion

      1.  Issue Preclusion

Issue preclusion, or collateral estoppel, is defined as: "an affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first[.]" <u>Black's Law Dictionary</u>, Seventh Edition (1999). In Nevada, "[t]he following factors are necessary for application of issue preclusion: '(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the

initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party to or in privity with a party to the prior litigation;' and (4) the issue [must have been] actually and necessarily litigated." Five Star Capital Corp. v. Ruby, 194 P.2d 709, 713 (Nev. 2008)(*quoting* Univ. of Nev. v. Tarkanian, 879 P.2d 1180, 1191 (Nev. 1994)). Thus, in the present action, all four factors favor issue preclusion preventing relitigation of liability of MCI arising under the Loan Documents. First, the undisputed issue is the breach of the Loan Documents (excluding the Guaranty). Second, the initial ruling on the merits in state court has become final. Third, MCI was a party to the State Court proceeding. Finally, the issue of MCI's liability was actually and necessarily litigated. Thus, MCI's liability has been established. Only the amount of the deficiency remains to be resolved.

However, the same cannot be said for Bean. Though he was in privity with MCI, he was not a party to the prior litigation and the breach of the Guaranty was not "actually and necessarily litigated." Plaintiff could have joined Bean as a party if it wished to litigate that issue in the prior action. Thus, Bean is not precluded from litigating the breach of the guaranty and raising defenses related to the Guaranty. Bean is precluded from raising any defenses arising from the breach of the Loan Documents, because he was in privity with MCI.

### 2. Claim Preclusion

Under the doctrine of claim preclusion, a subsequent court may preclude matters not litigated in a prior action as part of the same claim. "Res judicata, also known as claim preclusion, bars litigation of claims in a subsequent action that were raised or could have been raised in the prior action." Oregon Natural Desert, 2008 WL 140657 *3, citing Owens v. Kaiser Fund Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001). To trigger the doctrine of res judicata, the earlier suit must have (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies. Mpoyo v. Litton Electrc-Optical Systems, 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted). Thus, while claim preclusion bars Bean and MCI from relitigating the breach of the Loan Documents in this action, it does not bar Bean from

litigating his liability under the Guaranty which was not at issue in the underlying state court action. Therefore, Bean may raise his defenses arising under the Guaranty.

### B. Liability Under the Guaranty

To establish a breach of contract, Plaintiff must prove: (1) Plaintiff and Bean entered into a valid and enforceable contract; (2) Plaintiff performed all obligations required under the contract or was excused from performance; (3) Bean breached his obligations under the contract; and (4) Plaintiff suffered damages as a result. See Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000). Contracts of guarantee are subject to the statute of frauds. See NRS § 111.220(2), "To satisfy the statute of frauds, a contract must contain certain essential elements: '(A) note or memorandum must show on its face or by reference to other writings, first, the names of the parties...; second, the terms and conditions of the contract; third, the interest or property affected; and fourth, the consideration to be paid therefor.'" Pentax Corp. v. Boyd, 904 P.2d 1024, 1026 (Nev. 1995). "Concerning guarantees, the name of the party whose debt is being guaranteed is the interest affected, and is, therefore, one of the essential terms." Id.

The Guaranty at issue in this matter satisfies all four of these elements. First, the Guaranty is in writing and signed by Bean. See MSJ #75, Ex. 5, Guaranty; see also Exhibit 17, Bean's Responses to First Set of Requests for Admissions Nos. 24 and 25(admitting that he signed the Guaranty in his capacity as guarantor). Second, the Guaranty provides that Guarantor "unconditionally and irrevocably guarantees to Lender the punctual payment when due . . . of all principal, interest . . . and other sums of money now or hereafter due and owing, or which Borrower is obligated to pay, pursuant to the terms of the . . . Loan Documents." See Guaranty, Ex. 5 at ¶ 1. Third, the interest affected is defined as Borrower. See id. Fourth, Bean acknowledged that the Guaranty was given "[f]or good an valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in order to induce Lender to make Loan to Borrower," and words of this type are a sufficient expression of consideration. See White Sewing Mach. Co. v. Fowler, 78 P. 1034 (Nev. 1904). Consideration can be fairly implied from the language of the instrument, and the extension of credit

8

is sufficient consideration.  Id.; Matusik v. Large, 452 P.2d 457, 460 (Nev. 1969)("The assumption of a liability at the request of the promisor is a valuable consideration, as, for example a guaranty of the promisor's debt").   The Guaranty is a valid and enforceable contract between Lender and Bean.

To the extent that Bean argues that the Guaranty is an unenforceable adhesion contract, the Court declines to extend this important consumer protection to a sophisticated real estate investor such as Bean.  See Burch v. Second Judicial Dist. Ct., 49 P.3d 647, 648-51 (Nev. 2002)(defining adhesion contracts as standardized contract forms offered to consumers on a take it or leave it basis without affording the consumer a realistic opportunity to bargain).  The undisputed evidence presented by both parties shows that Bean had entered into more than one guaranty with Plaintiff, that the Guaranty signed in this case was similar to other guarantys executed by Plaintiff and Defendant and negotiated on Bean's behalf by his attorney.

Furthermore, to the extent that Bean argues that the Guaranty's waiver clauses make it unenforceable as unconscionable, the Court disagrees.  Nevada Revised Statute § 40.495 specifically provides a guarantor "may waive the provisions of NRS 40.430." The Nevada Supreme Court held "when [the Nevada Legislature] enacts statutes purporting to grant a group of people certain rights, we will construe the statues in a manner consistent with the enforceability of those rights." Ruiz v. City of N. Las Vegas, 225 P.3d 216, 223 (Nev. 2011).  Therefore, as the statute clearly allows a Guarantor the right to waive his NRS 40.430 rights, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding unconscionability of the waiver.

Furthermore, Plaintiff has failed to adduce sufficient evidence of procedural or substantive unconscionability.  Procedural unconscionability is based upon two factors: oppression and surprise. See Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir. 2002).  Oppression "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." Id.  Bean fails to explain how the waiver provisions in the Guaranty caused him a concrete harm or "injury in fact."  Bean also fails to distinguish this case from KJH & RDA Investor Group, LLC v. Eighth Judicial Dist. Ct., wherein the Nevada Supreme Court provided there

was no genuine issue of material fact that oppression did not exist when a party was a real estate investor who consulted with an attorney regarding the loan documents. KJH, 2009 LEXIS 89, *4 (Nev. April 22, 2009). Defendants do not refute that Bean is a sophisticated real estate investor. Bean alleges that he "was not represented by an attorney during the process of signing" the Loan Documents. It is not clear if Bean claims that he did not have an attorney sitting next to him when he actually put pen to paper when he signed his name or did not have an attorney advising him regarding the Loan Documents, including the Guaranty. Regardless, Bean's assertions are immaterial because both David Gifford and Bean's legal counsel, Terry Hauck, reviewed the Loan Documents and Guaranty before Bean's execution.[1] Oppression does not exist.

Surprise "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Ferguson, 298 F.3d at 783. Bean alleges that surprise exists because the waiver clauses are "just another paragraph within the Guaranty" and "there are no bold letters or italics" to put Bean on notice. No provision of Nevada law, however, requires waiver provisions in commercial contracts be presented in bold, italics, or any other typeset, and Plaintiff was under no obligation to educate Defendant Bean as to the purpose or effect of any term of the commercial agreement. Further, Defendants' arguments are at odds with the holding in KJH, wherein the Nevada Supreme Court held there was no genuine issue of material fact that surprise did not exist where an arbitration clause: (1) was aptly titled; (2) was in the same font as the surrounding provisions; and (3) was not attempting to escape notice. See KJH, at 4-6.

Substantive unconscionability focuses on the one-sidedness of the contract's terms." D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1163 (Nev. 2004). Defendant Bean also argues that the

---

[1] Bean admitted during his deposition that he did not read the Loan Documents, because he left that role to his legal counsel, Hauck, and to Gifford. Gifford has worked for Bean or a Bean business enterprise since 1989. Generally, Gifford's role at the time in question was to oversee new deals, managing the real estate portfolio and oversee lawsuits on a daily basis. Gifford no longer works directly for Bean or a Bean business enterprise, though he is paid by Bean to oversee existing projects.

10

Guaranty and the waivers contained therein are unconscionable because the "waiver provisions give BOA unfettered, unilateral control over the process." Defendant Bean, however, fails to show how these provisions caused him any harm. Further, Defendant fails to evidence how the waiver of certain defenses is substantively unconscionable in a commercial context, especially where the party asserting the defense of unconscionability has had: (1) substantial experience with Guarantees of loans for condominium conversion projects; (2) previously personally signed two substantially similar guaranties with BOA for condominium conversion projects in Clark County, Nevada; and (3) utilized counsel to review all of the Loan Documents, including the Guaranty; and (4) is a sophisticated businessman. Thus, Plaintiff has failed to raise any genuine issue of material fact regarding unconscionability.

Finally, Bean asserts that he cannot be held liable under the Guaranty because he lacked subjective knowledge regarding the waivers. "[W]aivers are presumptively valid unless the challenging party can demonstrate that the waiver was not entered knowingly, voluntarily, or intentionally." Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Ct., 40 P.3d 405, 410 (Nev. 2002). The Nevada Supreme Court has set forth four factors to be used in determining whether a waiver is knowing and voluntary: (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties, and (4) whether the waiving party's counsel had an opportunity to review the agreement. In Lowe, the Nevada Supreme Court found that where parties were represented by counsel and had prior experience in real estate any inequality in bargaining power of the parties became a less important factor. Here, MCI and Bean were represented by counsel. In fact, under the terms of the agreement Bean was required to obtain counsel to evaluate the Loan Documents and counsel issued an opinion letter prior to execution of the Guaranty. All waivers in the Guaranty were aptly titled and in the same font as the rest of the Guaranty. Thus, Bean, other than his self-imposed ignorance of the terms of the contract, entered the waiver knowingly and voluntarily. Accordingly, the Court

must grant summary judgment as to Bean's liability under the Guaranty and must set the action for a deficiency hearing.[2]

IV.  Motion in Limine

Plaintiff has moved to exclude Defendants' expert testimony or report regarding property valuation.  Generally, admission of expert testimony is governed by Federal Rule of Evidence 702 which allows an expert to testify in the form of an opinion or otherwise if: (1) the expert's specialized knowledge will assist the trier of fact to understand the evidence or determine a factual issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts.

Furthermore, a trial judge maintains a gatekeeper function to not only allow reliable and relevant testimony but to exclude testimony that is unreliable, irrelevant or confusing to the finder of fact.  See United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).  The Court has broad discretion to decide whether to admit expert testimony and in deciding how to test reliability.  Id.  Admissibility of expert testimony turns on the following questions determined by the Court: (1) whether the opinion is based on scientific, technical or other specialized knowledge; (2) whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has appropriate qualifications; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique the expert uses fits the conclusions; and (6) whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues or undue consumption of time.  Id. at 1168.

Having weighed the cited factors and given that the Court will be the fact finder at the deficiency hearing, the Court declines to exclude the expert testimony and report.  The Court finds that Plaintiff's arguments against admission of the evidence go more to the weight the evidence

---

[2] Any other defenses or arguments raised by Defendants are too insubstantial to merit discussion and the Court grants summary judgment to Plaintiff on those issues.

12

should be given rather than its admissibility. The possibility that the Court will be misled by flaws in the expert's methodology or qualifications is slight given the Court's experience with real estate transactions and valuation hearings. The better approach will be for the Court to allow the testimony, and if it finds that it falls short of *Daubert* standards to give it no weight. Accordingly, the Court denies the motion *in limine*.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#75) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Report or Testimony of Scott D. Stehman (#76) is **DENIED**.

DATED this 15th day of August 2012.

_____
Kent J. Dawson
United States District Judge